Herbert **CHANDLER**, 98–B–0758, Petitioner,

v.

Ronald W. **MOSCICKI**, Respondent.

No. 00–CV–276F.

United States District Court, W.D. New York.

March 10, 2003.

Herbert Chandler, Pro Se, Clinton Correctional Facility, Dannemora.

Frank J. Clark, III, District Attorney, Erie County, Joseph L. Kilbridge, Assistant District Attorney, of Counsel, Buffalo, for Respondent.

### DECISION and ORDER

FOSCHIO, United States Magistrate Judge.

### *JURISDICTION*

Petitioner, *pro se*, commenced this action seeking habeas relief, pursuant to 28 U.S.C. § 2254, on March 29, 2000. The parties consented to proceed before the Magistrate Judge.

### *BACKGROUND*

Petitioner ("Chandler") was charged in an indictment by an Erie County grand jury on April 18, 1997 with one count of burglary in the second degree (N.Y. Penal L. § 140.25[2]) (McKinney 1999), two counts of criminal possession of stolen property in the fourth degree (N.Y. Penal L. § 165.45[1], [5] (McKinney 1999)), one count of unauthorized use of a vehicle in the third degree (N.Y. Penal L. § 165.05[1] (McKinney 1999)), and one count of criminal mischief in the fourth degree (N.Y.

Penal L. § 145.00[1] (McKinney 1999)). The charges stemmed from events during the night of December 13–14, 1996, in which Chandler and an accomplice allegedly stole electronic equipment from a home and placed the stolen property into a stolen car.

On February 10, 1998, a jury convicted Chandler of burglary in the second degree, criminal possession of stolen property in the fourth degree, the lesser included misdemeanor offense of possession of stolen property in the fifth degree, unauthorized use of a vehicle in the third degree, and acquitted him of criminal mischief in the fourth degree. On April 8, 1998, the Hon. Penny Wolfgang, New York Supreme Court, Erie County, sentenced Chandler as a second violent felony offender to concurrent terms of incarceration of 15 years on the burglary charge, two to four years on the criminal possession of stolen property in the fourth degree charge, one year on the criminal possession of stolen property in the fifth degree charge, and one year on the unauthorized use of a vehicle charge.

Chandler timely appealed to New York Supreme Court, Appellate Division, Fourth Department, which unanimously affirmed his conviction on November 12, 1999. *People v. Chandler*, 266 A.D.2d 874, 698 N.Y.S.2d 815 (App. Div. 4th Dep't 1999). On his direct appeal, Chandler raised the issues set forth in the Petition,[1] but did not raise in his motion for leave to appeal to the New York Court of Appeals the claim concerning errors in the grand jury proceedings leading to his indictment. Chandler's motion for leave to appeal to the New York Court of Appeals was denied on February 29, 2000.[2] *People v. Chandler*, 94 N.Y.2d 902, 707 N.Y.S.2d 386, 728 N.E.2d 985 (N.Y.2000) (table).

In his Petition, Chandler asserts the following grounds for relief:

(1) the court erroneously charged the trial jury concerning accessory liability;

(2) ineffective assistance of counsel prevented him from testifying before the Grand Jury;

(3) denial of his right under New York law to testify before the Grand Jury; and

(4) error in the trial court's *Sandoval*[3] ruling which prevented him from testifying at trial.

On June 26, 2000, Respondent filed an Answer, Memorandum of Law, Exhibits, and the state court record regarding Chandler's conviction. (Docket Item Nos. 6, 7). Based on the following, the Petition is DISMISSED.

### FACTS

As noted, Chandler's conviction arises from charges that he burglarized a home in the City of Buffalo during the night of December 13, 1996, possessed property stolen from the home, and his unauthorized use and possession of a stolen car.

---

**1.** Chandler's Memorandum of Law in support of his appeal to the Appellate Division is attached as Exhibit B to the Answer.

**2.** Counsel's and Chandler's supplemental *pro se* submissions in support of the motion for leave to appeal to the New York Court of Appeals are attached as Exhibit C to the Answer.

**3.** A *Sandoval* hearing is based on the New York State Court of Appeals' decision in *People v. Sandoval*, 34 N.Y.2d 371, 357 N.Y.S.2d 849, 314 N.E.2d 413 (N.Y.1974), holding that a judge may determine the use by the prosecution at trial which may be made of a defendant's prior convictions or proof of a prior commission of any specific criminal, vicious or immoral acts by a defendant to impeach the defendant's credibility, should he testify.

(T. 66–75).[4] On December 14, 1996, at approximately 12:30 a.m., Buffalo police officers were on patrol on Landon Street when one of the officers saw two men near a car in a vacant lot. (T. 65, 66). The car was backed up to a fence and the driver's door and trunk were open. (T. 67, 222). When the police shone a flashlight, both men ran, and a chase ensued. (T. 68–71, 226, 227). Only Chandler was apprehended and returned to the car, which contained electronic equipment. (T. 76). The car's steering column was cracked and there were no keys in the ignition. (T. 73–75).

Chandler was arrested and charged with burglary, possession of stolen property and car theft, and after arraignment, a felony hearing was scheduled in Buffalo City Court. (HT.23).[5] Rather than proceeding with the hearing, the prosecutor dismissed the charges to present the case directly to a grand jury. (HT.29, 38). Chandler remained in custody pursuant to a parole violation detainer, and counsel was assigned. (HT.10, 25, 51). On December 23, 1996, Chandler personally wrote to the Erie County District Attorney's Office seeking to testify before the Grand Jury. (HT.7, 42). On February 12, 1997, the prosecutor sent a letter to defense counsel and Chandler advising that the case was scheduled for presentation to a grand jury on February 19, 1997. (HT.12, 25). Thereafter, the Grand Jury presentation was canceled to permit further investigation of the case. (HT.12, 21).

On March 21, 1997, the prosecutor sent another letter to Chandler and counsel stating that the case again was scheduled for a Grand Jury on April 15, 1997.

(HT.11, 14, 15, 25). Based on his discussions with Chandler concerning possible plea negotiations, a Grand Jury presentation, and the overall case, defense counsel believed that he had convinced Chandler that it was "not in his best interest" to testify before a Grand Jury. (HT.24, 28–31, 32). Defense counsel confirmed the available plea offer, his understanding of his discussion with Chandler, and enclosed another copy of the prosecutor's Grand Jury notice in a letter to Chandler. *Id.* However, Chandler did not contact his counsel after receiving the letter to renew his request to testify before the Grand Jury (HT.30, 31, 37, 47, 52, 54, 55). Nor did Chandler contact his counsel or the prosecutor to advise that he wished to testify. (HT.12–13, 17–18, 30). Nevertheless, on April 15, 1997, the prosecutor contacted counsel inquiring whether Chandler wanted to testify before the Grand Jury. (HT.16). Counsel, based on the discussions with his client, told the prosecutor that Chandler did not wish to testify. (HT.16, 36, 37, 39).

After Chandler was indicted, another attorney was assigned to represent him because of threats Chandler made to his first defense counsel. (HT.26–28, 33–34). Chandler challenged the indictment claiming that he was not permitted to testify before the Grand Jury, and a hearing was conducted during which the prosecutor, Chandler's former counsel, and Chandler testified. (HT.1–74). Following the hearing, Justice Wolfgang denied the motion finding that

[Chandler's] motion to dismiss the indictment pursuant to Criminal Procedural Law (CPL) § 190.50 subdivision

---

4. "T." refers to the page number of the trial transcript.

5. "HT." refers to the page number of the transcript from proceedings on May 27, June

25, and July 3, 1997, concerning whether Chandler waived the right, under N.Y.Crim. Proc. L. § 190.50 (McKinney 1993), to testify before a grand jury.

5(c) and 210.20 is timely filed, but must be denied.

CPL § 190.50 subdivision 5(a) sets forth a person's right to testify before a Grand Jury when a criminal charge against that person is to be submitted to it. In this case, [Chandler's] letter of December 23, 1996 constituted the notice required by statute and the District Attorney's office treated it as such.

The District Attorney made sufficient notification to defense counsel as required by statute for [Chandler] to exercise the right he initially requested (CPL § 190.50 subdivision 5(b)).

However, [Chandler] waived his right to appear by failing to indicate in any manner that he desired to appear and testify before the Grand Jury. (citations omitted).

(Answer, Exhibit A, Memorandum and Order, dated August 22, 1997).

Chandler had difficulties with his new counsel, thereby requiring the court to assign a third defense attorney. (Answer, Exhibit A). Before jury selection, the trial court conducted a *Sandoval* hearing, and held that if Chandler elected to testify, the prosecution could inquire whether he was convicted of each of his prior burglary convictions by name of the crime and date and the subsequent violations of parole, but not as to the underlying facts, and as to his prior convictions for endangering the welfare of a child and attempted criminal possession of stolen property in the fifth degree, but not as to a pending probation violation or charges from his assault on Erie County Sheriff's deputies. (ST.17–20).[6] The case proceeded to jury trial. Before the close of the case, Chandler discussed with his counsel the possibility of Chandler testifying in his defense, and decided that based on the court's *Sandoval* ruling, it was not in his best interest to testify. (T. 275).

During the charge conference with the trial court, the prosecutor requested an accessory liability charge under N.Y. Penal L. § 20.00 (McKinney 1993). (T. 274–75). The defense opposed the request arguing that Chandler would be prejudiced because the prosecution had not proceeded under a theory of accessory liability until the victim of the alleged burglary testified that someone other than Chandler admitted burglarizing the victim's home. (T. 272–73). The prosecution countered that the theory of the case against Chandler was not altered by an accomplice charge because as early as the investigation stage, the defense had been advised that Chandler had served as an accessory to the charged crimes, the charge was consistent with the pretrial disclosures and proceedings, and was supported by the evidence and the law. (T. 273–74). The trial court found that the prosecution proceeded throughout on the theory that Chandler had an accessory who was not apprehended, and as such, that Chandler was not prejudiced by the requested accomplice charge, which was supported by the evidence and the law. (T. 274). Defense counsel did not object to the substance of the charge given by the trial court. Accordingly, the court instructed the jury concerning Chandler's potential guilt as an accomplice. (T. 345–47).

On April 1, 1998, Chandler filed a motion to vacate the guilty verdict (N.Y.Crim. Proc. L. § 440 (McKinney 1994)), arguing that he was denied due process because he did not have time to prepare a defense to the "new" theory of accessory liability. (Sent. T. 2–5, 7–9).[7] The prosecutor op-

---

**6.** "ST." refers to the page number of the February 3, 1998 *Sandoval* hearing transcript.

**7.** "Sent. T." refers to the page number of the April 8, 1998 sentencing transcript.

posed the motion, arguing that the defense had been made aware of the accessory liability theory, and the charge was supported by the evidence and state law. (Sent. T. 5–7). The trial court denied the motion and sentenced Chandler as a second violent felony offender to concurrent terms of imprisonment, ranging from 15 years on the burglary conviction to one year on the unauthorized use of a vehicle conviction. (Sent. T. 9–10, 12–13).

## DISCUSSION

### I. Standard of Review for Habeas Corpus Petitions

Under the federal habeas statute, 28 U.S.C. § 2254, as amended by the Anti–Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), where a state court has adjudicated the merits of a petitioner's claim, relief may not be granted unless that adjudication

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d). Section 2254(d)(1) requires a federal court to give deference to a state court determination. *Brown v. Artuz,* 283 F.3d 492, 497–98 (2d Cir.2002); *Smalls v. Batista,* 191 F.3d 272, 277 (2d Cir.1999) (citing *Nelson v. Walker,* 121 F.3d 828, 833 (2d Cir.1997)). As stated by the Supreme Court

... § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court ... Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor,* 529 U.S. 362, 412–13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Sacco v. Cooksey,* 214 F.3d 270, 273 (2d Cir.2000), *cert. denied,* 531 U.S. 1156, 121 S.Ct. 1107, 148 L.Ed.2d 977 (2001). The new deferential standard enacted by AEDPA review applies regardless of whether the state court expressly refers to the federal claim or relevant federal case law. "For purposes of AEDPA deference, a state court 'adjudicates a state prisoner's federal claim on the merits when it (1) disposes of the claim 'on the merits,' and (2) reduces its disposition to judgment. When a state court does so, a federal habeas court must defer in the manner prescribed by" AEDPA. *Sellan v. Kuhlman,* 261 F.3d 303, 312 (2d Cir.2001). In addition, while both AEDPA and its predecessor statute recognize that a presumption of correctness should apply to state court findings of fact, *Whitaker v. Meachum,* 123 F.3d 714, 715 n. 1 (2d Cir.1997), AEDPA requires a petitioner to rebut that presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *LanFranco v. Murray,* 313 F.3d 112, 117 (2d Cir. 2002). A presumption of correctness applies to findings by state trial and appellate courts. *Galarza v. Keane,* 252 F.3d 630, 635 (2d Cir.2001).

## II. The Exhaustion Requirement

In reviewing a petition, subject to the limitations of 28 U.S.C. § 2254, a federal court must determine whether a petitioner is in custody in violation of his rights under the Constitution or laws or treaties of the United States. *Coleman v. Thompson*, 501 U.S. 722, 729, 111 S.Ct. 2546, 115 L.Ed.2d 640, *reh'g denied*, 501 U.S. 1277, 112 S.Ct. 27, 115 L.Ed.2d 1109 (1991). A court may deny a state prisoner's petition on the merits of claims for which available state remedies have been exhausted, even though the petition contains unexhausted claims. 28 U.S.C. § 2254(b)(2). Failure to timely exhaust state remedies results in procedural default of the claims. *Spence v. Superintendent, Great Meadow Corr. Facility*, 219 F.3d 162, 169–70 (2d Cir. 2000); *Washington v. James*, 996 F.2d 1442, 1447 (2d Cir.1993).

In the interest of comity and in keeping with 28 U.S.C. § 2254(b), federal courts will not consider constitutional challenges that have not been "fairly presented" to a state court. *Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971); *Daye v. Attorney Gen. of State of N.Y.*, 696 F.2d 186, 191 (2d Cir.1982) (*en banc*). A state prisoner seeking federal habeas review of his conviction must exhaust available state remedies with respect to the issues in the petition. *Rose v. Lundy*, 455 U.S. 509, 521–22, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). "Fairly presented" means that a petitioner must have given the state court notice that a federal constitutional claim was at issue. *Grady v. Le Fevre*, 846 F.2d 862, 864 (2d Cir.1988); *Petrucelli v. Coombe*, 735 F.2d 684, 688–89 (2d Cir.1984). Exhaustion of state remedies generally requires presentation of a claim to the highest state court from which a decision can be obtained. *Daye*, 696 F.2d at 190 n. 3.

Chandler asserts four grounds for relief, namely that (1) his federal right to due process was violated when the trial court improperly charged the jury on accessory liability, (2) he received ineffective assistance of counsel which prevented him from testifying before the Grand Jury, (3) he was not permitted to testify before the Grand Jury; and (4) the court erred in its *Sandoval* ruling which precluded him from testifying at trial. (Petition ¶ 12). Respondent argues that two of the grounds were not exhausted, *i.e.*, that Chandler's counsel was ineffective for failing to cause him to testify before the Grand Jury and that his right to do so under New York law was violated. (Answer ¶ 5). Specifically, Respondent notes that while the two claims were raised on direct appeal, Chandler failed to raise them in the motion for leave to appeal to the New York Court of Appeals. (Answer, Exhibits B, C).

This court finds that Chandler's claims as to the Grand Jury proceedings, *i.e.*, that he received ineffective assistance of counsel which prevented him from testifying before the Grand Jury and that he was denied the right to testify before the Grand Jury, are unexhausted, and the remaining claims are exhausted, rendering the petition "mixed." Before AEDPA's amendments to 28 U.S.C. § 2254, federal courts were required to dismiss "mixed" petitions. *Rose*, 455 U.S. at 522, 102 S.Ct. 1198. However, AEDPA's amendments permit courts to deny, but not grant, habeas petitions on the merits of claims where a petitioner failed to exhaust state remedies as to such claims. 28 U.S.C. § 2254(b)(2). Whether to consider and deny an unexhausted claim is within the court's discretion. *Pratt v. Greiner*, 306 F.3d 1190, 1196–97 (2d Cir.2002). After reviewing the instant record, the court will exercise its discretion to consider all of Chandler's claims on their merits, including the two unexhausted claims, and deny

habeas relief on all of the grounds raised in the Petition. 28 U.S.C. § 2254(b)(2).

### III. The Due Process Claim Concerning the Accomplice Liability Jury Charge

Chandler claims the prosecution altered the theory of liability in the Indictment from that as a principal to as an accomplice for the first time during the trial, depriving him of the opportunity to prepare a defense and violating his due process right to a fair trial because he relied upon that information in preparing his defense. (Petition ¶ 12). Chandler argues that the accessory liability charge given to the jury, over defense counsel's objection, did not afford him "fair notice" of the theory of accessory liability, hindered the preparation of his defense, and contradicted the information in the Indictment and Bill of Particulars. (Petition ¶ 12). The trial court charged the jury on accessory liability after finding that the prosecution's theory of Chandler's criminality throughout the proceedings had been that Chandler acted with an accomplice, that this theory was disclosed to the defense with sufficient notice, and that the charge reflected the evidence and the law.[8] (T. 272–75, 345–47).

■ In habeas petitions involving state court trials, "[t]he issue that should be determinative in every case is whether the petitioner had a fair trial." *Smalls v. Batista*, 191 F.3d 272, 277 (2d Cir.1999) (quoting *Agard v. Portuondo*, 117 F.3d 696, 717 (2d Cir.1997)). A due process claim in a federal habeas petition alleging that a state prisoner was unable, based on lack of notice in the indictment, to adequately prepare his defense resulting in actual prejudice "is largely one of state law, subject only to the general fourteenth amendment guarantees of due process." *United States ex rel. Corozzo v. Attorney Gen. of State of N.Y.*, 475 F.Supp. 707, 709 (E.D.N.Y.1979) (citing *Peters v. Kiff*, 407 U.S. 493, 496, 92 S.Ct. 2163, 33 L.Ed.2d 83 (1972) (the general Fourteenth Amendment guarantee of due process is the appropriate measure of grand jury indictments because the requirements of the Fifth Amendment have not been applied to the states)); *United States ex rel. Ballard v. Bengston*, 702 F.2d 656, 660 (7th Cir. 1983) (same and citing *Hurtado v. California*, 110 U.S. 516, 4 S.Ct. 111, 28 L.Ed. 232 (1884)).

■ As applicable to the states, the Fourteenth Amendment's due process clause generally has been interpreted as requiring that "[a] defendant is entitled to fair notice of the charges against him." *LanFranco v. Murray*, 313 F.3d 112, 119 (2d Cir.2002) (habeas review of notice provided in a New York state court trial). The right of a state prisoner to receive

---

**8.** In response to Chandler's difficulties with his assigned counsel, the trial judge had to assign, in succession, three different attorneys to represent him. The third attorney, assigned shortly before trial, served demands for discovery and a bill of particulars four days before jury selection, but did not inquire whether Chandler was acting as a principal or an accomplice. The prosecutor responded to the demands. (Answer, Exhibit A). Significantly, Chandler does not allege he received ineffective assistance of trial counsel based on the failure of his third trial attorney to request particularization on this issue. In New York state, a demand for a bill of particulars may inquire "whether the people intend to prove that the defendant acted as principal or accomplice or both." N.Y.Crim. Proc. L. § 200.95(1)(a) (McKinney 1993). Although Chandler was indicted as a principal, the trial court found that the theory of prosecution throughout the case reinforced that Chandler had an accomplice, thereby refuting the argument that Chandler's defense suffered from prejudice or surprise. (T. 274). The record also demonstrates that Chandler admitted having an accomplice in statements to the police. (T. 89–91).

"reasonable notice of the charges against him is incorporated in the fourteenth amendment and cannot be abridged by the states." *Hulstine v. Morris*, 819 F.2d 861, 863–64 (8th Cir.1987) (in a federal habeas review of a state court conviction, due process requirements may be satisfied if the state prisoner receives "actual notice" of the charges, even if the indictment or information is deficient), *cert. denied*, 484 U.S. 1068, 108 S.Ct. 1034, 98 L.Ed.2d 998 (1988). "The general rule that allegations and proof must correspond is based upon the obvious requirements (1) that the accused shall be definitely informed as to the charges against him, so that he may be enabled to present his defense and not be taken by surprise by the evidence offered at trial; and (2) that he may be protected against another prosecution for the same offense." *United States v. Wozniak*, 126 F.3d 105, 111 (2d Cir.1997) (analysis under the Fifth Amendment of a federal indictment resulting in a drug-related conviction). While a constructive amendment of an indictment can violate the right to fair notice, "not all alterations of the indictment are unconstitutional." *Id.* at 109. A defendant must be given notice of the "core of criminality to be proven at trial", while permitting the prosecution significant flexibility in the nature of the proof adduced at trial. *Id.* at 110 (citing *United States v. Patino*, 962 F.2d 263, 266 (2d Cir.1992)).

▮▮▮ The record does not provide a basis to find that the evidence at trial and the accessory liability instruction impermissibly amended the Indictment. A defendant facing felony charges has a right under the New York state constitution to an indictment by a grand jury. *LanFran-*

*co v. Murray*, 313 F.3d 112, 118–19 (2d Cir.2002). Where an indictment articulates a "set of facts supporting a material element of the crime charged, the People at trial are [not] at liberty to present evidence that affirmatively disproves them." *Id.* at 119. However, when an indictment contains broad allegations, it is not an impermissible variance to permit the prosecution to present "alternative theories that fall within that allegation." *Id.* This principle applies here because the theory of liability is not an essential element of the offense charged upon which the jury will determine guilt, and there is no distinction under New York law between criminal liability as a principal or as an accomplice. N.Y. Penal L. § 20.00 (McKinney 1998).[9] The elements of a crime remain the same regardless of whether a defendant is charged as a principal or as an accomplice. *People v. Rivera*, 84 N.Y.2d 766, 622 N.Y.S.2d 671, 646 N.E.2d 1098, 1099 (N.Y.1995). Additionally, whether a defendant is convicted as a principal or an accomplice "has no bearing upon the theory of the prosecution." *Id.*; *People v. Duncan*, 46 N.Y.2d 74, 412 N.Y.S.2d 833, 385 N.E.2d 572, 577 (N.Y. 1978). A state indictment need not allege whether a defendant is charged as a principal or an accomplice, and the distinction generally is considered "academic." *People v. Guidice*, 83 N.Y.2d 630, 612 N.Y.S.2d 350, 634 N.E.2d 951, 954 (N.Y.1994).

As such, the court finds that the record does not support Chandler's claim that his rights under the Due Process Clause were violated because he was not given adequate notice of his potential liability as an accomplice under the Indictment and a reasonable opportunity to prepare a de-

---

**9.** "When one person engages in conduct which constitutes an offense, another person is criminally liable for such conduct when, acting with the mental culpability required for the commission thereof, he solicits, requests, commands, importunes, or intentionally aids such person to engage in such conduct." N.Y. Penal Law § 20.00 (McKinney 1998).

fense against the charges. The trial court correctly found that the theory of prosecution did not unconstitutionally change the basis for Chandler's culpability as an accomplice rather than as a principal because while Chandler was formally charged by the Indictment as a principal in having committed the burglary, he was notified as early as the proceedings in Buffalo City Court that he had acted with an accomplice, and faced criminal liability on that basis as well. (Answer, Exhibit A, Booking Form, Felony Complaint, Supporting Deposition). As the case proceeded, further notice of the potential accomplice liability was supplied during the *Huntley*[10] hearing, more than three months before trial, when a police officer testified that Chandler made statements at his arrest acknowledging that he had an accomplice. (Answer, Exhibit A, *Huntley* T. 7, 11–12). Defense counsel cross examined the police officer during the *Huntley* hearing about Chandler's accomplice, further demonstrating notice of potential liability as an accomplice. *Id.* In exercising its discretion, the trial court found that Chandler had proper notice of his potential culpability as an accomplice under the allegations of the Indictment and Bill of Particulars, and the information disclosed during the pretrial proceedings (T. 274, Sent. T. 9–10), and this determination was affirmed on appeal. 698 N.Y.S.2d at 815. Moreover, as accomplice liability is not, as noted, *supra,* under New York law, an element of the offenses charged in the Indictment, there is no basis to find that the challenged instruction improperly amended the Indictment. As such, the Indictment, together with the factual information provided to Chandler and his attorney more than adequately informed him of the "core of criminality" alleged against him. *United States v. Patino, supra.*

While Chandler asserts that the accessory liability charge interfered with his defense because of unfair surprise, he does not state how his defense would have differed if he was given the prior formal notice of accomplice liability he claims should have been provided. Significantly, Chandler does not argue that the accessory liability instruction was not based on the evidence at trial or that it improperly shifted the burden of proof to the defense. Nor does the record suggest that the accomplice liability instruction as given was incorrect as a substantive matter, and defense counsel did not object to the instruction on that basis. As such, the charge, including the accessory liability instruction, did not violate federal due process requirements because Chandler was given proper notice of his potential criminal culpability as an accomplice as to the substantive violations charged in the Indictment. (T. 274; Sent. T. 9–10). Therefore, Chandler has not shown that the state courts engaged an unreasonable application of clearly established Federal law, as determined by the Supreme Court, or rendered a decision based on an unreasonable determination of the facts in the record. *See* 28 U.S.C. § 2254(d)(1); *Williams,* 529 U.S. at 412–13, 120 S.Ct. 1495. Accordingly, Chandler is not entitled to habeas relief on this ground.

**IV. The *Sandoval* Ruling**

 Chandler claims that the trial court erred in ruling that he could be questioned about certain of his prior criminal convictions if he testified at trial. However,

---

10. In a *Huntley* hearing, the trial judge considers the voluntariness of statements made by the defendant. *People v. Huntley,* 15 N.Y.2d 72, 255 N.Y.S.2d 838, 204 N.E.2d 179 (N.Y.1965). Chandler was present during the *Huntley* hearing concerning the admissibility of his statements to the police. (*Huntley* T. 2–4).

[i]t is well-settled that a petitioner's failure to testify is fatal to any claims of constitutional deprivation arising out of a *Sandoval* type ruling because in the absence of such testimony the Court has no adequate non-speculative basis upon which to assess the merits of that claim even when the issue is raised on direct appeal. *See Luce v. United States,* 469 U.S. 38, 41–42, 105 S.Ct. 460, 463, 83 L.Ed.2d 443 (1984). It follows that where, as here, a similar claim is raised by a petition for a writ of habeas corpus, the same result must obtain. (citations omitted).

*Peterson v. LeFevre,* 753 F.Supp. 518, 521 (S.D.N.Y.), *aff'd,* 940 F.2d 649 (2d Cir. 1991) (table). Furthermore, a trial court's evidentiary ruling concerning the admission of prior convictions to impeach a criminal defendant is "not redressable in a federal habeas corpus proceeding unless there is a showing that the particular errors were of a constitutional magnitude." *Underwood v. Kelly,* 692 F.Supp. 146, 151 (E.D.N.Y.1988), *aff'd,* 875 F.2d 857 (2d Cir. 1989). Furthermore, because Chandler did not testify at trial (T. 275), he does not have a basis for habeas relief. *Underwood,* 692 F.Supp. at 151 (constitutional challenge to an allegedly erroneous *Sandoval* ruling rejected in habeas petition, in part, because petitioner did not testify); *Jamison v. Grier,* 2002 WL 100642, at *22 (S.D.N.Y. January 25, 2002) (same). Considering the extent of the evidence adduced at trial supporting Chandler's conviction, it cannot be said that even if there was an error in the *Sandoval* ruling, that the error was constitutional in magnitude. Accordingly, the fourth ground in the petition is without merit.

## V. The Unexhausted Claims of Error

### A. Denial of Right to Testify Before a New York State Grand Jury

■ Chandler alleges that he was not permitted to testify before the Grand Jury despite having notified the prosecutor of his intention to do so, and that his counsel was ineffective by not asserting his right to testify or arranging "to waive that right on the record." (Petition ¶ 12). A grand jury is charged with determining whether there is probable cause to believe that a crime has been committed and, if so, to indict the persons reasonably believed to have committed it, thereby requiring defendants to stand trial. *Branzburg v. Hayes,* 408 U.S. 665, 686–87, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972); *Bracy v. United States,* 435 U.S. 1301, 1302, 98 S.Ct. 1171, 55 L.Ed.2d 489 (1978). The Supreme Court has held that a "[r]eview of facially valid indictments on [grounds of quality or adequacy of the evidence] 'would run counter to the whole history of the grand jury institution, and neither justice nor the concept of a fair trial requires it.'" *United States v. Williams,* 504 U.S. 36, 54–55, 112 S.Ct. 1735, 118 L.Ed.2d 352 (1992) (quoting *Costello v. United States,* 350 U.S. 359, 364, 76 S.Ct. 406, 100 L.Ed. 397 (1956)); *Lopez v. Riley,* 865 F.2d 30, 32 (2d Cir. 1989) (errors in state grand jury proceedings are not cognizable in a federal habeas petition citing *United States v. Mechanik,* 475 U.S. 66, 106 S.Ct. 938, 89 L.Ed.2d 50 (1986)). While the grand jury clause of the Fifth Amendment imposes some restrictions on federal prosecutions, those requirements have not been applied to the states through the Fourteenth Amendment. *LanFranco v. Murray,* 313 F.3d 112, 118 (2d Cir.2002) (citing *Branzburg v. Hayes,* 408 U.S. 665, 688 n. 25, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972)).

■ However, where a state creates a right, such as a right to testify before a grand jury, that right cannot be forfeited in an arbitrary or fundamentally unfair manner. *See Evitts v. Lucey,* 469 U.S.

387, 393, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985) (the Constitution does not require states to allow a defendant to appeal as of right, but once a right is created, the procedures must comport with the Due Process and Equal Protection clauses). New York has created a right, in certain circumstances, for a person against whom a charge is to be submitted to a grand jury to testify before that grand jury. N.Y.Crim. Proc. L. § 190.50(5) (McKinney 1993). New York also established a procedure by which a defendant can file a motion to dismiss an indictment as defective because the prosecution did not meet the statutory requirements for grand jury proceedings. N.Y.Crim. Proc. L. § 210.35 (McKinney 1993).

Here, Chandler moved to dismiss the indictment against him as defective because he was not permitted to testify before the Grand Jury (Petition ¶ 12), and the trial court conducted a hearing on this issue pursuant to N.Y.Crim. Proc. L. § 210.35 (McKinney 1994). At that hearing, defense counsel testified that he and Chandler discussed whether it was in his best interest to testify before the Grand Jury, and based on their discussion, counsel believed that Chandler agreed that it was not. (HT.24, 28–31, 32). In light of their discussion, counsel informed the prosecutor that Chandler did not wish to testify and the Grand Jury presentation proceeded. The trial court found that defense counsel confirmed his understanding in writing to Chandler, without comment, further demonstrating a waiver of his state law right to appear before the Grand Jury. (HT.30, 31, 37, 47, 52–55). Applying the presumption of correctness to the trial court's findings, the court finds that Chandler has not submitted "clear and convincing evidence" to rebut that presumption. *See* 28 U.S.C. § 2254(e)(1); *Whitaker*, 123 F.3d at 715; *Lawrence*, 91 F.Supp.2d at 536. Thus, there is no basis to warrant a finding that Chandler was deprived of his state law right to appear before the Grand Jury prior to his indictment.

Even if Chandler's assertion that he was not permitted to testify before the Grand Jury had a basis in the record, habeas relief is not warranted because he has not stated a cognizable claim under federal law. It is well established that "[d]efendants have no constitutional right to appear before a grand jury." *United States v. Ruiz*, 894 F.2d 501, 505 (2d Cir. 1990). Simply put, under the Constitution, a "suspect under investigation by the grand jury [does not] have a right to testify, or to have exculpatory evidence presented." *Williams*, 504 U.S. at 50, 112 S.Ct. 1735. While New York has created a statutory right for some defendants to testify before a grand jury, the record does not establish that Chandler's right to testify before the Grand Jury was forfeited in an arbitrary or fundamentally unfair manner. *See Evitts v. Lucey*, 469 U.S. at 393, 105 S.Ct. 830. As discussed, Chandler was advised of the opportunity to appear before the Grand Jury and determined with his counsel's advice that tactically it was unwise to do so. Accordingly, Chandler's challenge to the Grand Jury proceedings does not set forth a violation of a federal constitutional right, and as such does not provide a basis for habeas relief.

### B. The Ineffective Assistance of Counsel Claim

Chandler further claims that he received ineffective assistance of counsel because he was not allowed to testify before the Grand Jury. (Petition ¶ 12). To prevail on this claim, a petitioner must establish the quality of adversarial representation was so deficient that his trial fundamentally was unfair. *Strickland v. Washington*, 466 U.S. 668, 696, 104 S.Ct. 2052, 80 L.Ed.2d

674 (1984). Specifically, a petitioner "must show both that 'counsel's performance was deficient' and 'that the deficient performance prejudiced the defense.'" *Pavel v. Hollins*, 261 F.3d 210, 216 (2d Cir.2001) (ineffective assistance of counsel standard is "rigorous" and "highly demanding"). A federal court must determine whether "despite the strong presumption of reliability, the result of the particular proceeding is unreliable" because of the deficient conduct of defense counsel. *Strickland*, 466 U.S. at 696, 104 S.Ct. 2052.

▇▇▇ "[T]he Sixth Amendment right to effective assistance of counsel can be violated if counsel failed to raise a significant and obvious state law claim." *LanFranco*, 313 F.3d at 118. However, courts consistently have held that counsel's failure to ensure that a defendant testifies before a grand jury does not amount to ineffective assistance of counsel. *Kohler v. Kelly*, 890 F.Supp. 207, 213 (W.D.N.Y.1994) (listing cases), *aff'd*, 58 F.3d 58 (2d Cir.1995). This especially is true in a case, as here, where there are sound tactical reasons for defense counsel's advice not to testify before a grand jury. These include Chandler's prior criminal history, which would have been a subject of examination by the prosecutor, the waiver of the Fifth Amendment rights as to any information he volunteered, the advantage to the prosecution from pretrial discovery by his testimony, and providing cross examination material if Chandler chose to testify at trial. Thus, the court finds that Chandler has not alleged acts or omissions by his attorney that were "outside the *wide* range of professionally competent assistance." *Strickland*, 466 U.S. at 690, 104 S.Ct. 2052 (emphasis in original).

▇▇▇ In order to establish "prejudice," a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052. A "reasonable probability" is one "sufficient to undermine confidence in the outcome." *Id.* Considering the relatively low burden of proof [11] to obtain an indictment by a grand jury under New York law, the quantity and quality of the evidence against Chandler, and his prior criminal record, it is unlikely that he would not have been indicted even if he testified before the Grand Jury. Even assuming that Chandler testified that someone other than he entered the victim's home and stole property, his culpability under state law would not have been eliminated. N.Y. Penal L. § 20.00 (McKinney 1993). The evidence at trial included testimony by the police that Chandler was arrested after being chased from a stolen car that contained property stolen from the victim's house and that Chandler admitted that he knew the car was stolen, and the victim's identification of the property in the stolen car as having been stolen from his home. (T. 67–73, 86, 161–63, 166–170). Based on the evidence at trial, at best Chandler's testimony may have shifted the primary theory of liability against him to that as an accomplice, rather than as a principal. Even so, the Indictment would have charged Chandler with the same crimes carrying the same potential sentences. *See* N.Y. Penal L. § 20.00 (McKinney 1993).

Thus, the record does not show that defense counsel failed to take steps to

---

**11.** A New York state "grand jury may indict a person for an offense when (a) the evidence before it is legally sufficient to establish that such person committed such offense ... and (b) competent and admissible evidence before it provides reasonable cause to believe that such person committed such offense." N.Y.Crim. Proc. L. § 190.65(1) (McKinney 1993).

insist that Chandler was permitted to testify before the Grand Jury. Even if counsel failed to protect Chandler's right to testify before the Grand Jury, Chandler has not shown that "counsel's performance was deficient *and* that the deficient performance prejudiced the defense." *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052 (emphasis in original). Here, there is no basis to find that Chandler would have avoided indictment if he had testified before the Grand Jury because he was the victim of mistaken identity or asserted some exculpatory set of facts. Certainly, no assertion to this effect is contained in the Petition. As a result, the court finds that Chandler's right to effective assistance of counsel during the Grand Jury proceedings was not violated, and he is not entitled to habeas relief on this ground.

### *CONCLUSION*

Based on the foregoing, the Petition (Docket Item No. 1) is DISMISSED. Further, as the court finds there is no substantial question presented for appellate review, a certificate of appealability will not issue. 28 U.S.C. § 2253(c)(2).

SO ORDERED.